IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ALEXANDRIA HARVISON, and**  **PLAINTIFFS**
**MORGAN MCLEOD**

**v.**  **Civil No. 1:23cv72-HSO-BWR**

**G.A. WEST & CO., INC.**  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT G.A. WEST & CO., INC.'S MOTION [3] TO DISMISS, AND GRANTING PLAINTIFF ALEXANDRIA HARVISON'S REQUEST TO AMEND COMPLAINT [1-1]**

BEFORE THE COURT is Defendant G.A. West & Co., Inc.'s Motion [3] to Dismiss. The Motion [3] is fully briefed. After due consideration of the parties' filings and relevant legal authority, the Court finds that Defendant G.A. West & Co., Inc.'s Motion [3] to Dismiss should be granted in part as to all of Plaintiff Morgan McLeod's claims, and as to Plaintiff Alexandria Harvison's Title VII retaliation claim, and denied in part in that Plaintiff Alexandria Harvison will be given leave to amend the Complaint [1-1] regarding her Title VII discrimination claim based on quid pro quo sexual harassment.

I. BACKGROUND

On February 10, 2023, Plaintiffs Alexandria Harvison ("Harvison") and Morgan McLeod ("McLeod") (collectively "Plaintiffs") filed a Complaint [1-1] in the Circuit Court of Greene County, Mississippi, asserting claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

1

2000e et seq. ("Title VII"), against their former employer, Defendant G.A. West & Co., Inc. ("Defendant"). Compl. [1-1] at 3-5. Plaintiffs allege that a supervisor employed by Defendant sent text messages to Harvison that contained sexually explicit material and "often invited physical interaction." *Id.* at 4. Harvison refused the supervisor's advances, but "Defendant later hired a new female employee who began having sexual relations with said supervisor." *Id.* When this new employee obtained preferential treatment from the supervisor, such as benefits and extra hours, both Harvison and McLeod reported this conduct to Defendant. *Id.* Plaintiffs assert that Defendant terminated them due to their complaints, which constituted protected activity under Title VII. *Id.* at 5.

Defendant removed this case to this Court, *see* Not. of Removal [1], and filed the present Motion [3] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). It argues that Plaintiffs have raised only a claim of retaliation based on their supervisor's preferential treatment of his sexual partner, and that such claims are not cognizable under Title VII. Mem. [4] at 1. Defendant contends that Plaintiffs' complaints were not protected activity because they only reported their supervisor's discrimination in favor of his paramour. *Id.* at 4-5.

In their Response [6], Plaintiffs take the position that their allegations do not constitute a mere "paramour preference" case, but instead demonstrate quid pro quo sexual harassment. Resp. [6] at 2. They attempt to distinguish their circumstances from the typical paramour preference case on two bases: (1) the sexual relationship between the supervisor and the other female employee

developed after she was hired, and after Harvison had rejected that supervisor's advances; and (2) Harvison herself was sent sexually explicit messages that offered raises and promotions in exchange for sexual favors. *Id.* at 2-3. Accordingly, Plaintiffs contend that their supervisor conditioned hours and benefits on their willingness to submit to his requests, and that, when refused, he found someone who was willing, and took hours and benefits from Plaintiffs. *Id.* Plaintiffs also request leave to amend their Complaint [1-1] to add additional allegations regarding their quid pro quo theory. *Id.* at 3.

Defendant replies that "[t]he timing of a paramour relationship is inconsequential," Reply [7] at 2, and that "a paramour-preference case is [not] somehow converted into a *quid pro quo* case merely because the paramour-supervisor relationship followed an alleged effort by the supervisor to engage another employee," *id.* at 4. Defendant also argues that Plaintiffs have not raised any claims besides retaliation, and should not be given leave to amend because an employee's loss of hours or benefits for not engaging in sexual activity with their supervisor does not constitute quid pro quo harassment. *Id.* at 7.

## II. DISCUSSION

A.  Rule 12(b)(6) standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a

3

defendant has acted unlawfully," and the facts alleged must be more than "merely consistent with a defendant's liability." *Id.* (quotation omitted). A court must accept all well-pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021). However, a complaint's legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680.

When "considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A district court may also rely on "any documents the pleadings mention that are central to the plaintiff's claims" when a party files such documents with its motion or response. *In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523, 546 (5th Cir. 2022) (citing *Collins*, 224 F.3d at 498-99); *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Here, Plaintiffs have attached to their Complaint [1-1] the charges of discrimination that they filed with the Equal Employment Opportunity Commission ("EEOC"), and have attached to their Response [6] some text messages allegedly sent from their supervisor to Harvison, which are discussed in the Complaint [1-1], as evidence of the supervisor's requests for sexual favors. *See* Compl. [1-1] at 7-8; Ex. [6-1] at 1-3. The Court finds that these items are properly considered in deciding the Motion [3].

4

B.     Plaintiffs' retaliation claims

Title VII prohibits an employer from discriminating against an employee who "has made a charge, testified, assisted, or participated in any manner in [a Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022). To establish a prima facie case of retaliation under Title VII, the plaintiff must show "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo*, 31 F.4th at 1000 (quotation omitted). Defendant takes the position that Plaintiffs' retaliation claims are meritless because their reports regarding their supervisor's conduct addressed only his preferential treatment of his sexual partner, which does not constitute protected activity under Title VII. Mem. [4] at 1-2.

"Under Title VII, an employee has engaged in protected activity if he or she has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)) (emphasis removed). In this case, only the first clause is implicated because Plaintiffs allege that they were fired prior to filing their EEOC complaint. *See id.*; Compl. [1-1] at 4-5, 7-8. To satisfy the first clause, Plaintiffs must

5

demonstrate that they had a reasonable belief that Defendant, through the supervisor, was engaged in unlawful employment practices. *Byers*, 209 F.3d at 428.

Plaintiffs assert that they engaged in protected activity by "complain[ing] to Defendant about the preferential treatment being given to the female employee who engaged in sexual relations with the supervisors [sic]." Compl. [1-1] at 4. Plaintiffs cannot state a claim of Title VII retaliation on this basis because it was not reasonable to believe that this conduct constituted an unlawful employment practice. *Wilson v. Delta State Uni.*, 143 F. App'x 611, 613-14 (5th Cir. 2005) ("Because it is settled law in this Circuit that such paramour favoritism does not run afoul of Title VII, [Plaintiffs'] alleged belief to the contrary could not have been reasonable."). This is because when a supervisor discriminates in favor of a paramour, "the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender," and therefore does not qualify as sex-based discrimination prohibited by Title VII. *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 (5th Cir. 2003) (quotation omitted). Though Plaintiffs may have been terminated for complaining about the increased hours and benefits offered to their supervisor's sexual partner, these actions are not protected activity under Title VII.[1] *Wilson*, 143 F. App'x at 613-14.

To the extent Plaintiffs alternatively request leave to amend their Complaint [1-1] to assert that they also were retaliated against for reporting their supervisor's

---

[1] Plaintiffs' attempt to distinguish their case by arguing that their supervisor began the paramour relationship with the other female employee after she was hired is unavailing. *See Ackel*, 339 F.3d at 380, 382 (noting that the complained-of relationship began after the paramour was hired but was nevertheless considered paramour favoritism).

6

harassment of Harvison, the Court finds that such allegations are plainly belied by their EEOC charges, which indicate that their only complaints made to Defendant concerned the preferential treatment. Ex. [1-1] at 7 (McLeod's statement that she "complain[ed] to [her] supervisor about another female getting special treatment and extra hours because she was sleeping with the supervisor"); *id.* at 8 (Harvison's statement that she "complained about [her supervisor] giving [his sexual partner] preferential treatment including extra hours and benefits").

While a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), it may "deny a motion to amend if it is futile," *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000). An amended complaint is futile if it would fail to state a claim upon which relief could be granted based on "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (quotations omitted). In light of Plaintiffs' statements which reveal that their sole reports of misconduct to Defendant involved the benefits bestowed upon their supervisor's paramour, any amendment to make such retaliation claims purportedly based upon reports to Defendant about the supervisor's harassment of Harvison would be futile. *See id.* at 872-73; Fed R. Civ. P. 15(a); *Wilson*, 143 F. App'x at 613-14; *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464-67 (5th Cir. 1970) (noting that, for Title VII claims, "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"); *Ellzey v. Catholic Charities Archdiocese of New Orleans*, 833 F. Supp. 2d 595, 602 (E.D. La. 2011) ("[A] claim is not reasonably

7

expected to grow out of a Plaintiff's EEOC charge where the claim is not alleged in a charge."); *Barnett v. La. Dep't of Health*, No. 17-1793-JWD-SDJ, 2023 WL 2467877, at *8 (M.D. La. Mar. 10, 2023) ("[A]ny claims not described in the EEOC charge are not properly before the Court." (quotation omitted)). Defendant's Motion [3] to Dismiss therefore should be granted as to both Plaintiffs' Title VII retaliation claims.

C.  Plaintiffs' quid pro quo sexual harassment claim and request for leave to amend

While Defendant asserts that the Complaint [1-1] only presents a retaliation claim based on Plaintiffs' complaints about paramour favoritism, Reply [7] at 4 n.2, Plaintiffs counter that their allegations also state a claim for quid pro quo sexual harassment because their supervisor first sent Harvison text messages that implicitly offered more hours, a raise, and a promotion in exchange for sexual favors, and the preferential treatment of the other female employee began after Harvison rejected his requests, Resp. [6] at 1-3; Ex. [6-1] at 1-3.

"To establish a Title VII quid pro quo claim, a plaintiff must show that the acceptance or rejection of a supervisor's alleged sexual harassment resulted in a 'tangible employment action.'" *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009). Tangible employment actions significantly alter the plaintiff's employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *id.* (quoting *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002)), and are typically characterized by direct economic harm, *Burlington Indus.,*

8

*Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998). Once a plaintiff has alleged that she suffered a tangible employment action, she must establish a causal nexus between her acceptance or rejection of the alleged sexual advances and the adverse employment action. *La Day*, 302 F.3d at 482.

Plaintiffs allege that Harvison was subjected to quid pro quo sexual harassment by their supervisor in the form of sexually explicit text messages, Compl. [1-1] at 4; *see also* Ex. [6-1] at 1-3, and that they suffered tangible employment actions because they were later terminated, Compl. [1-1] at 4-5. However, as presently alleged, the Complaint [1-1] does not connect their terminations to this harassment, but instead only to their reports of the preferential treatment given by their supervisor to his sexual partner. *See id.* ("Plaintiffs lost their employment because Plaintiffs reported and complained about unlawful behavior."). As a result, the Complaint [1-1] does not presently state a sufficient claim of quid pro quo sexual harassment because Plaintiffs have not asserted a causal nexus between their termination and the supervisor's sexual harassment of Harvison. *La Day*, 302 F.3d at 482.

In an effort to remedy this deficiency, Plaintiffs have requested leave to amend their Complaint [1-1] to include the following allegations:

> Plaintiffs lost hours and benefits because neither was willing to engage in sexual activity with their supervisor. See also Exhibit A.[2] Both were terminated for complaining and reporting their supervisor's misconduct.

---

[2] "Messages Between Harvison and Supervisor regarding raises/promotions in exchange for sexual favors." Resp. [6] at 3 n.1.

9

Resp. [6] at 3 (footnote in original).³ Plaintiffs assert that these text messages show that their supervisor offered a raise and promotion in exchange for sexual favors. *Id.* at 3 n.1; *see also* Ex. [6-1] at 1-3. Defendant argues that this proposed amendment would be futile because "the fact that an employee allegedly 'lost hours and benefits' because they did not 'engage in sexual activity with their supervisor' but the paramour did simply cannot, under any set of facts, constitute a *quid pro quo* violation of Title VII." Reply [7] at 7.

The Court agrees that the proposed amendment would be futile as to Plaintiff McLeod. There is no allegation that she was ever propositioned or suffered any sexual harassment herself, and therefore she cannot connect any employment action to sexual harassment of her by the supervisor.⁴ *See* Compl. [1-1] at 4-5; Resp. [6] at 3. McLeod's claims, even with the proposed addition, essentially argue that she was harmed, even though she was not harassed, because her supervisor's sexual partner received benefits due to that relationship. This discrimination, while unfair, is not prohibited by Title VII as it constituted only paramour favoritism as to her. *See Ackel*, 339 F.3d at 382.

As to Harvison, however, Defendant misreads Plaintiffs' proposed amendment. With this new allegation, Harvison claims that she was sexually harassed by her supervisor in the form of text messages which proposed raises and promotions in exchange for sexual favors, *see* Ex. [6-1] at 1-2 (supervisor stating

---

³ Exhibit A refers to the Exhibit [6-1] attached to the Response [6].
⁴ And again, she cannot maintain a retaliation claim because she did not include this claim in her EEOC charge. *Sanchez*, 431 F.2d at 464-67; *Ellzey*, 833 F. Supp. 2d at 599-602.

10

that a better position on the job "comes with a price" and indicating that with a change in her role on the job, Harvison was expected to perform sex acts), and that after she refused these advances, she did not receive a promotion or raise, and instead lost hours and benefits, *see* Compl. [1-1] at 4-5; Resp. [6] at 3; Ex. [6-1] at 1-3; *see also* Ex. [1-1] at 8. Taking these allegations as true and viewing them in the light most favorable to Plaintiffs, as the Court must for a Rule 12(b)(6) motion, Harvison could plausibly assert that she suffered a tangible employment action, in the form of a denied promotion or lost benefits and raises, and that this action occurred due to her rejection of her supervisor's sexual advances. *See Ellerth*, 524 U.S. at 761-62 (noting that direct economic harm, such as a denial of a raise or a promotion, is a tangible employment action). Harvison's amendment, if allowed, could therefore plausibly state a claim of quid pro quo sexual harassment, and as such it would not be futile.[5] *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 221-22 (5th Cir. 2023) (finding sufficient evidence of quid pro quo sexual harassment where the plaintiff showed that her supervisor suspended and then fired her after she rejected his requests for sexual contact); *Equal Emp. Opportunity Comm'n v. Al Meghanic Enter., Inc.*, No. SA-21-CV-760-JKP, 2021 WL 5450147, at *3 (W.D. Tex. Nov. 19, 2021) (finding that the plaintiff stated a claim of quid pro

---

[5] Although Harvison's claim of retaliation in her EEOC charge stated only that she complained of the preferential treatment given to the supervisor's paramour, Harvison did include allegations of sexual harassment in the EEOC charge. *See* Ex. [1-1] at 8 ("My supervisor began sending me sexual messages including one of him holding his genitalia though [sic] his clothes."). Accordingly, Harvison's sexual harassment claim is within the scope of her EEOC charge. *Sanchez*, 431 F.2d at 464-67; *Ellzey*, 833 F. Supp. 2d at 599-602.

11

quo harassment where it alleged that the employee rejected her supervisor's sexual propositions, he threatened to terminate her, and she was ultimately terminated).[6]

While Harvison may not have articulated an actionable Title VII grievance based on the preferential treatment given to her supervisor's paramour alone, Defendant does not explain why that would eliminate an otherwise viable claim for the alleged harassment she suffered, followed by a loss of benefits, raises, or a promotion. In fact, if benefits offered to Harvison in exchange for sexual favors were instead given to her supervisor's sexual partner, this arguably lends support to her position that she would have received tangible employment benefits had she submitted to his requests. *See, e.g.*, *Ray v. Dufresne Spencer Grp., LLC*, No. 1:17-CV-71-RP, 2019 WL 97029, at *1, 3-4 (N.D. Miss. Jan. 3, 2019) (finding that the plaintiff had sufficient evidence of quid pro quo sexual harassment where her supervisor "subjected her to repeated sexual harassment which allegedly included propositions for sex, sexual innuendo and sexually explicit remarks," and after she refused, her accounts and commissions were given to another employee who was having an affair with this supervisor).

Defendant cites to *Smith v. Touro Infirmary*, No. 2:14cv2689, 2015 WL 5093487, at *3 (E.D. La. Aug. 28, 2015), which dismissed a hostile work environment claim where the plaintiff asserted that she did not receive employment

---

[6] Alternatively, Harvison may also be able to state a claim for a hostile work environment. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000) (discussing the two forms of Title VII sexual harassment claims: (1) quid pro quo claims which involve a tangible employment action; and (2) hostile work environment claims which lack a tangible employment action but require a showing of severe or pervasive sexual harassment). However, Harvison has not argued that she is alternatively raising a hostile work environment claim, and the Court therefore does not consider whether she plausibly has alleged or could allege such a claim.

benefits given to other employees who submitted to her supervisor's sexual advances. *Smith* is inapplicable because, there, the plaintiff only argued that "she endured a hostile work environment because she refused to conform to [her supervisor's] stereotypical view of women," and the district court did not address whether the allegations would have stated a claim for quid pro quo sexual harassment. *Id.* (quotation omitted); *cf. Ray*, 2019 WL 97029, at *1, 3-4; *Peich v. Arthur Andersen & Co., S.C.*, 841 F. Supp. 825, 829-30 (N.D. Ill. 1994) (rejecting a plaintiff's paramour favoritism argument but denying a motion to dismiss based on the harassment she experienced because she claimed "she was not extended certain employment benefits (including promotion) because, unlike the favored employee, she did not grant sexual favors" which "fit the classic definition of *quid pro quo* sexual harassment—submission to sexual demands is alleged to have been a condition of receiving tangible employment benefits").

Here, Harvison has argued that she experienced such sexual harassment, and the Court finds that this claim could plausibly allege quid pro quo harassment based on her allegations that her supervisor offered her a raise and promotion in exchange for sexual favors, and that she did not receive these benefits and lost hours after she rejected his advances. *See Alaniz*, 591 F.3d at 772; *Wallace*, 57 F.4th at 221-22. Harvison's proposed amendment would not be futile, and there has been no showing of undue delay or bad faith. *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (discussing when leave to amend should be denied).

Accordingly, the Court finds that Harvison should be given leave to amend her Complaint [1-1] to include her proposed allegations regarding her Title VII discrimination claim based on sexual harassment. Defendant's Motion [3] should be denied as to this claim.

### III. CONCLUSION

To the extent the Court has not specifically addressed any remaining arguments of the parties, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant G.A. West & Co., Inc.'s Motion [3] to Dismiss is **GRANTED IN PART** as to all of Plaintiff Morgan McLeod's claims, and as to Plaintiff Alexandria Harvison's Title VII retaliation claim, and **DENIED IN PART** as to Plaintiff Alexandria Harvison's Title VII discrimination claim based on quid pro quo sexual harassment.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all of Plaintiff Morgan McLeod's claims, and Plaintiff Alexandria Harvison's Title VII retaliation claim are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Alexandria Harvison is **GRANTED LEAVE TO AMEND** her Complaint [1-1] to include her allegations regarding her Title VII discrimination claim based on quid

pro quo sexual harassment. Plaintiff Alexandria Harvison shall file any amended complaint within 14 days of the entry of this Order.

**SO ORDERED AND ADJUDGED**, this the 18th day of April, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE